In re John T. GOODMAN, Debtor.

Diana L. BERKFIELD, Plaintiff,

v.

John T. GOODMAN, Defendant.

Bankruptcy No. 81 B 04303.
Adv. No. 81 A 1786.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 23, 1982.

Teri Lieberman, Lieberman & Kurasch, Chicago, Ill., for plaintiff.

Stephen N. Sira, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action comes on to be heard on a complaint by Diana L. Berkfield (hereinafter referred to as plaintiff) seeking to determine the dischargeability of the debt owed by John T. Goodman (hereinafter referred to as debtor).

The plaintiff alleges that on November 8, 1978, she received a default judgment based, *inter alia,* on fraud and deceit against the debtor in Riverside County, California (hereinafter referred to as California judgment) in the amount of $16,153.04 money damages and $50,000.00 punitive damages. The California judgment was registered in Illinois, pursuant to which the debtor's wages were garnished in the amount of $5,275.62. The plaintiff contends that as of April 30, 1981, the balance due on the judgment, including interest, is $74,799.13. The plaintiff reasons that since Section 523(a)(2)(A) provides that a debt based on fraud is nondischargeable, the debt based on the California judgment should be nondischargeable.

In his answer to the plaintiff's complaint, the debtor pleaded an affirmative defense based on the grounds that (1) the plaintiff's complaint was filed only to harass the debtor, (2) since the California judgment was by default, it is contrary to the due process clause of the United States Constitution, and (3) the debtor performed his obligations to the plaintiff satisfactorily and without

being paid. In addition, the debtor has filed a counter complaint seeking $6,000.00 for damages incurred due to the registration of the California judgment in Illinois and the subsequent wage garnishment. The counter complaint also contends, in extremely vague terms, that the California judgment is void due to defects in some way relating to residency, venue, due process, and the nature of a default judgment.

The plaintiff has submitted for this court's review a copy of the complaint, transcript,[1] and judgment from the California proceeding. The parties have had several status hearings, but no issues have come to trial. Neither party has filed a motion for Judgment on the Pleadings, Summary Judgment, or Declaratory Judgment with respect to the controversy herein. In fact, the parties have attempted to stipulate that no witnesses or additional evidence would be presented at trial.

Consequently, the parties await this court's decision to the stipulated issues of (1) whether the California judgment is entitled to full faith and credit, so that the basis for the judgment may not be re-examined in this proceeding, and (2) if the basis can be re-examined, whether the evidence presented should be limited to the facts contained in the transcript of the California proceeding. This court will address these issues in order to prevent additional delay and to foster judicial economy in resolving this controversy.

 Both of the issues herein center on the ability to collaterally attack the California judgment. Stated another way, the issues bring into question the binding effect of the California judgment on this proceeding. *See generally,* J. Martin, *Conflicts of Laws,* at 608–09 (1978) (hereinafter referred to as Martin). Essentially, three interrelated principles determine the binding effect of a judgment on subsequent litigation:

---

1. The transcript evidences that on November 8, 1978, a hearing was held before the Honorable J. William Mortland, Judge of the Superior Court of California. At the hearing, the plaintiff testified that the debtor was her employee and that while in this capacity the debtor misappropriated her funds, incurred expenses in her name, and damaged her property. No other witnesses testified at the hearing.

full faith and credit,[2] *res judicata,*[3] and collateral estoppel.[4] Thus, although the plaintiff has urged for the application of only full faith and credit, the interrelation between the principles requires that this court address each principle separately.

■ The requirement of full faith and credit is derived from Article IV, Section 1 of the United States Constitution, which provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof.

By its own terms, this constitutional provision applies only to states. Consequently, full faith and credit for judicial proceedings is constitutionally required only where both the first suit and the second suit are in state court. *See* Vestal, *supra* note 3, at 35. By federal statute, however, federal courts are obligated to give full faith and credit to state court judgments.[5] Thus, full faith and credit also applies where the first suit was in state court and the second suit was in federal court. *See* Vestal, *supra,* note 3 at 35.

■ The United States Supreme Court has stated that full faith and credit "generally requires every State to give a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 243, 11 L.Ed.2d 186 (1963). While this statement is not patently incorrect, it is misleading to the extent that it suggests that the principles of full faith and credit and *res judicata*

---

**2.** *See* text *infra.*

**3.** *Res judicata* precludes further litigation of the same cause of action between the same parties after a final, valid judgment on the merits. 1B J. Moore & T. Currie, *Moore's Federal Practice* ¶ 0.401, at 11–12 (2d Ed. 1982). *See also Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings,* 37 Wash. & Lee L.Rev. 281, 281–82 (1980) (hereinafter cited as *Res Judicata*) ("Res judicata makes a valid, final judgment on the merits conclusive as to all matters that should or could have been litigated in reference to the same cause of action."). Thus, *res judicata* has become known as claim preclusion. *See Allen, supra,* 449 U.S. at 94 n. 5, 101 S.Ct. at 415 n. 5; *Societa Internazionale Turismo v. Barr (In re Lockwood),* 14 B.R. 374, 381 (Bkrtcy.E.D.N.Y.1981); Vestal, *The Constitution and Preclusion/Res Judicata,* 62 Mich.L. Rev. 33, 34 (1963) (hereinafter cited to as Vestal).

**4.** Collateral estoppel precludes relitigation of the same issue between the same parties in different causes of action. *Res Judicata, supra* note 3, at 282. *See also Allen, supra* note 3, 449 U.S. at 94, 101 S.Ct. at 415 ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party in the first case."); Martin, *supra,* at

609 ("collateral estoppel refers to the effects of findings of fact actually contested in one lawsuit upon a subsequent piece of litigation which may involve a different cause of action but some of the same facts"). Thus, collateral estoppel has become known as issue preclusion. *See Allen, supra* note 3, 449 U.S. at 94 n. 5, 101 S.Ct. at 415 n. 5; *Societa Internazionale Turismo v. Barr (In re Lockwood),* 14 B.R. 374, 381 (Bkrtcy.E.D.N.Y.1981); Vestal, *supra* note 3, at 34.

**5.** 28 U.S.C. § 1738 (1976). The statute provides:

§ 1738. State and Territorial statutes and judicial proceedings: full faith and credit

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

are one and the same—applying at the same time and to the same extent in all situations. In fact, full faith and credit and *res judicata* (and collateral estoppel as well) differ significantly as to origin,[6] extent of application,[7] and nature of preclusive effect.[8] Accordingly, this court believes that a more precise definition of full faith and credit is that it requires that a judgment rendered in State A be given the same preclusive effect in State B that it would have been given in State A.[9]

■ The doctrine of full faith and credit extends only to valid judgments.[10] And even for valid judgments, full faith and credit is subject to certain limitations. Therefore, it is generally considered that full faith and credit does not apply where (1) there is no jurisdiction over the parties, (2) there is an overriding policy of the forum state against the application of full faith and credit in a particular instance, and (3) there is a limitation intrinsically related to the judgment which would prevent the application of full faith and credit in a particular instance.[11]

**6.** Full faith and credit is from a constitutional, U.S. Const., art. IV, § 1, and federal statutory origin, 28 U.S.C. § 1738 (1976), whereas *res judicata* and collateral estoppel are from a common law origin. *Res Judicata, supra* note 3, at 281.

**7.** *Res judicata* and collateral estoppel apply only to judicial proceedings, whereas full faith and credit applies to public acts and records as well. Moreover, a prior federal court decision is not entitled to full faith and credit in a subsequent state court proceeding, but *res judicata* does apply in the same situation. *Stoll v. Gottlieb,* 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); Vestal, *supra* note 3, at 35 to 37.

**8.** Full faith and credit implements the entire body of law which has developed in the state of the first court proceeding as to the preclusive effect of a prior judgment. Vestal, *supra* note 3, at 38. *Res judicata* requires only claim preclusion. *See* note 3 *supra.* Collateral estoppel requires only issue preclusion. *See* note 4 *supra.*

**9.** *See* Vestal, *supra* note 3, at 38. *See also Kremer v. Chemical Construction Corp.,* —— U.S. ——, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) ("Section 1783 requires federal courts to

■ Moreover, it is significant to recognize that full faith and credit has two aspects: (1) as a basis for enforcement of a judgment outside of the state where rendered and (2) as a means to preclude litigation in a new or collateral proceeding of a claim or issue arising out of the same facts as the original suit. *See* The Congressional Research Service, *The Constitution of the United States of America* 794 (1972). An example of the first aspect is a suit brought to enforce a debt arising from a prior judgment. In this instance, the prior judgment is entitled to full faith and credit and, absent any applicable limitation, is conclusive as to liability in the subsequent suit. *See In re Cochran,* No. 3–80–03021, Slip op. at 4 (Bankr.S.D. Ohio, February 18, 1982) ("As a general rule, a default judgment is conclusive in an action brought upon the judgment, and this court is obligated to afford full faith and credit to valid state court judgments.").

■ The case at bar does not involve the enforceability of a judgment, but rather it centers on the second aspect of full faith and credit—the preclusive effect of a judgment. The limitations on full faith and

give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged."); Restatement (Second) of Conflicts of Law § 103 comment a ("Full faith and credit requires, almost invariably, that a valid State judgment be recognized in sister States, which means that the judgment must be given the same conclusive effect with respect to the parties, the subject matter of the action and the issues involved that the judgment has in the State of rendition.").

**10.** *See In re Cochran,* No. 3–80–03021, *Slip op.* at 4 (Bankr.S.D.Ohio, February 18, 1982). The Restatement (Second) of Conflicts of Law § 92 comment c, also supports this assertion:

A "valid judgment," as the words are used in the Restatement of this Subject, is a judgment which fulfills the requirements of the rule of this Section. Such judgments, when rendered in a State, territory or possession of the United States are entitled to recognition and enforcement under full faith and credit in sister States, except as stated in §§ 103, 107– 121.

**11.** Vestal, *supra* note 3, at 43–47.

credit, however, prevent the California judgment from precluding litigation on the dischargeability issue in the case at bar.

The first limitation on full faith and credit (no jurisdiction over the parties) provides that a judgment can be attacked on the basis of a lack of jurisdiction over the parties if that issue was not raised and decided in the prior court.[12] The question of jurisdiction was not litigated in the California proceeding, and the plaintiff has not established, or attempted to establish, in this proceeding the basis for the California court's jurisdiction, despite the debtor's vague attempt to raise the issue.

But even if the California court had jurisdiction over the parties, the California judgment would not preclude litigation of the dischargeability issue because dischargeability is within the exclusive jurisdiction of the Bankruptcy Court. 3 *Collier on Bankruptcy* ¶ 523.11, at 523–66 (15th ed. 1982) ("The effect of section 523(c) is to give the bankruptcy court exclusive jurisdiction over actions to determine the dischargeability of a debt excepted from discharge by section 523(a)(2), (4), or (6)."). In effect, pursuant to the second limitation on full faith and credit, the bankruptcy court as the forum court has an overriding policy to be the only court empowered to decide the issue of dischargeability.[13] Moreover, the California judgment is not directly applicable to the proceeding herein because the California court decided only the issue of liability based on fraud, not the issue of the dischargeability of a debt.[14] Thus, this court

---

**12.** *See Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry disclosed that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.

*Id.* at 111, 84 S.Ct. at 244. *Accord* Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution,* 45 Colum.L.Rev. 1, 8 (1945); Vestal, *supra* note 3, at 43–44.

*See also Underwriters National Assurance Co. v. North Carolina Life and Accident Ins. Assoc.,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982):

To be sure, the struction of our nation as a union of States, each possessing equal sovereign powers, dictates some basic limitations on the full-faith-and-credit principles enumerated above. Chief among these limitations is the caveat, consistently recognized by this Court, that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Durfee v. Duke,* 375 U.S. 106, 110 [84 S.Ct. 242, 244, 11 L.Ed.2d 186] (1963). Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given. *See Nevada v. Hall,* 440 U.S. 410, 421 [99 S.Ct. 1182, 1188, 59 L.Ed.2d 416] (1979).

*Id.* 102 S.Ct. at 1365.

**13.** *See* Vestal, *supra* note 3, at 44–45 ("Under some circumstance the policy of the forum state may be so strong on a particular point that it may be able to avoid the doctrine of full faith and credit and refuse to honor the judgment handed down in the first state."). *See also* Restatement (Second) of Conflict of Laws § 103:

§ 103. Limitations on Full Faith and Credit A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister State.

*Id.* Although these sources of authority refer to a policy of a state, this court finds that the same theory is applicable to the bankruptcy court where there is an overriding policy stemming from the Bankruptcy Code.

**14.** *See* 3 *Collier on Bankruptcy* ¶ 523.11, at 523–68 (15ed 1982):

When a judgment based on a liability falling within the scope of section 523(a)(2) reaches the bankruptcy court the issue is one of dischargeability and not one of liability. While liability may have been adjudicated, the non-dischargeability of the liability has not been adjudicated. For the purposes of determining the dischargeability of the liability, the bankruptcy court should be able to base its findings on the facts relevant under section

holds that under the doctrine of full faith and credit, the California judgment is not conclusive as to the issue of fraud in the dischargeability proceeding before this court.

*Res judicata* and collateral estoppel, however, can be applied independently of full faith and credit. This fact is the source of some confusion. As stated previously, full faith and credit requires that a judgment be given the total preclusive effect available in the rendering state. *See* notes 8 and 9 and accompanying text *supra*. In addition, one treatise states that "[f]ull faith and credit implements the doctrine of res judicata..." 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.401, at 17 (2d Ed. 1982). But, despite their interrelationship, full faith and credit, *res judicata,* and collateral estoppel are distinct legal principles. For an analysis of the differences between these principles as to origin, extent of application, and nature of preclusive effect, *see* notes 6 to 8 *supra*. Due to these distinctions, many courts have analyzed the applicability of *res judicata* and collateral estoppel to dischargeability hearings without addressing the effect of full faith and credit. *See e.g., Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Dohm,* 19 B.R. 132 (Bkrtcy.N.D.Ill.1981); *In re Spector,* 22 B.R. 226 (Bkrtcy.N.D.N.Y. 1982); *In re Iannelli,* 12 B.R. 561 (Bkrtcy.S. D.N.Y.1981).

One of the few court decisions which has recognized that the preclusive effect of a judgment may stem from either full faith and credit or these common law doctrines is *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Specifically, the Supreme Court in *Allen* stated:

Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.

*Id.* at 96, 101 S.Ct. at 416. Thus, despite the inapplicability of full faith and credit in the case at bar, there is a possibility that the California judgment may be conclusive as to the dischargeability proceeding on the basis of these common law doctrines.

■ In order for *res judicata* to apply, there must be:

(1) identity of the thing being sued upon; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of capacity of a party to sue or be sued.

*In re Allen,* 3 B.R. 355, 357 (Bkrtcy.W.D.N. Y.1980) *citing In re Meade Land & Development Co., Inc.,* 1 B.R. 279 (Bkrtcy.E.D.Pa. 1979).

■ The United States Supreme Court, in *Brown v. Felson,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), addressed the issue of whether *res judicata* applied to a dischargeability proceeding in the bankruptcy court under Section 17 of the prior Bankruptcy Act. In resolving a conflict among the circuits, the Court held that *res judicata* did not apply and that "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceeding when considering the dischargeability of respondent's debt." *Id.* at 138–39, 99 S.Ct. at 2212–13. The Court reasoned that Congress intended for the bankruptcy court to resolve dischargeability issues and that by limiting the application of *res judicata,* the bankruptcy court would be able to weigh all the evidence and accurately determine whether the debtor did in fact commit deceit, fraud, or malicious conversion. *Id.* at 138, 99 S.Ct. at 2212.

Although *Brown* involved Section 17 of the prior Bankruptcy Act, *Brown's* rationale has been universally applied to dischargeability proceedings under Section 523 of the Bankruptcy Code. *See e.g. In re Dohm,* 10 B.R. 132 (Bkrtcy.N.D.Ill.1981); *In re Spector,* 22 B.R. 226 (Bkrtcy.N.D.N.Y. 1982); *In re Supple,* 14 B.R. 898 (Bkrtcy.D. Conn.1981). Accordingly, this court holds

523(a)(2) and not be bound by the findings of the state court.

that *res judicata* does not limit this court to the California judgment and record in determining the dischargeability of the debt arising from the California judgment.

 *Brown,* however, did not address the issue of whether collateral estoppel may preclude the relitigation in a dischargeability hearing of issues which were addressed in a prior court proceeding. 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. Thus, if the elements of collateral estoppel are satisfied, issues actually decided in a prior suit cannot be relitigated. *Id.* The well-recognized elements of collateral estoppel are:

(1) The issue sought to be precluded must be the same issue as that involved in the prior action;

(2) the issue must have been actually litigated;

(3) that issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the final judgment.

*In re Allen,* 3 B.R. at 357–58. *See Spector,* 22 B.R. at 231; *Supple,* 14 B.R. at 903.

 In the case at bar, the California judgment was procured by default. Consequently, the issues therein were not actually litigated. Since the second element of collateral estoppel is not satisfied, this court holds that it is not bound by the issues decided in the California judgment through the operation of collateral estoppel. Thus, the issue of whether the debt due to the plaintiff stems from "actual fraud" by the debtor must be reexamined by this court. *Accord In re Iannelli,* 12 B.R. 561, 563 (Bkrtcy.S.D.N.Y.1981) ("the doctrine of collateral estoppel does not bar relitigation by [the bankruptcy court] of the issues included in the default judgment").

In addition, it is questionable whether the first element of collateral estoppel (identity of issues sought to be precluded) has been satisfied. The elements of fraud under Section 523(a)(2)(A) are:

(1) The debtor made representations of fact to the creditor;

(2) said representations were false;

(3) the debtor knowingly and fraudulently [*i.e.,* with intent and purpose to deceive] made said representations. The debtor's act must involve moral turpitude or intentional wrong. *Fraud implied in law* which may exist without imputation of bad faith or immorality *is insufficient;* and

(4) the creditor relied on the misrepresentation to its detriment.

*In re Spector,* 22 B.R. at 232 *quoting In re Greenblatt,* 8 B.R. 994 (Bkrtcy.E.D.N.Y. 1981). It is not clear from the complaint in the California proceeding whether the elements of fraud under California law are identical to those under the Bankruptcy Code, and the plaintiff has made no effort to establish similarity between the two standards. Thus, the plaintiff also may be barred from applying collateral estoppel in the case at bar due to failure to meet its first element.

 The plaintiff has the burden of proving the issue of fraud under Section 523(a)(2)(A) of the Bankruptcy Code by clear and convincing evidence. *In re Spector,* 22 B.R. at 232 (citing various authorities in note 6). Considering the transcript and pleadings from the California proceeding, the pleadings and status hearings before this court, and the absence of any testimony on plaintiff's behalf, this court holds that the plaintiff has not satisfied her burden of proof. Thus, no matter how sympathetic this court is to the injuries which the plaintiff may have suffered, no relief can be granted due to the plaintiff's failure to establish her burden of proof. Accordingly, this court finds that the debt arising from the California judgment is dischargeable.

 With regard to the debtor's counter complaint for damages resulting from the California judgment being registered in Illinois, the debtor's pleadings do not establish any basis for recovery. This court recognizes that a debtor may be entitled to a turnover of wages garnished and transferred during the 90 day preference period. *See In re Mayo,* 19 B.R. 630 (D.C.E.D.Va. 1981); *In re Cox,* 10 B.R. 268 (Bkrtcy.D.Md.

1981). The debtor in the case at bar, however, has not established the five elements in a preference action or that any of the garnished wages were transferred during the 90 days before the filing of his bankruptcy petition. Considering all the evidence presented, this court holds that the debtor has not established the elements of his counter complaint by clear and convincing evidence. Thus, the relief requested by the debtor in his counter complaint is denied.

WHEREFORE, IT IS HEREBY ORDERED that the complaint seeking to declare the debt in question nondischargeable is denied.

IT IS FURTHERED ORDERED that the debtor's counter complaint is denied.*

---

* This decision is entered in compliance with the stay of enforcement until December 24, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982), and the decision of the United States Court of Appeals for the Seventh Circuit in *Farmers Union Central Exchange, Inc. v. Hertz*, No. 82–2211 (7th Cir. August 13, 1982).