In re Melvin E. LEVINSON, Debtor.

Francine KLINGMAN, Plaintiff,

v.

Melvin E. LEVINSON, Defendant.

Bankruptcy No. 82 B 5309.

Adv. No. 82 A 2297.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 18, 1986.

---

8. *Muscogee,* 126 Ga. at 225, 54 S.E. at 1035.

Lionel Brazen, Manuel Rosenstein, Chicago, Ill., for plaintiff Klingman.

Lawrence Fisher, Jennifer Platt of Friedman & Koven, Chicago, Ill., for debtor Levinson.

ROBERT E. GINSBERG, Bankruptcy Judge.

The plaintiff has filed a summary judgment motion in connection with an adversary complaint seeking to have her debt found to be nondischargeable under 11 U.S.C. § 523(a)(4). The plaintiff claims that the debt owed her, which is embodied in an agreed state court order, is nondischargeable because it is based on fraud or defalcation by the debtor while he acted in a fiduciary capacity. She also seeks to have the attorneys' fees awarded in the state court proceedings and postpetition interest found to be nondischargeable. The Court finds that there is no genuine issue of material fact and therefore grants her motion for summary judgment.

## I.  FACTS

On July 19, 1967, the plaintiff and debtor entered into a trust agreement naming the debtor as trustee. The plaintiff turned over assets valued at $37,550 to the debtor as trustee. The Trust Agreement in paragraph B of Article IV empowered the debtor to invest the trust res to earn income for the beneficiary.

In August 1967, the debtor purchased a fractional share of certain oil and gas leases ("leases"). The plaintiff asserts that the debtor misappropriated trust assets by purchasing these leases in his own name with trust assets. The debtor, however, denies this allegation and contends that this investment was made within his discretion as trustee under the trust agreement, and that the property was properly escrowed. Further, the debtor claims that the trust income was appropriately expended to insure oil production and to earn tax-free income. If there were nothing further in this record, there would be issues of material fact and the instant motion would have to be denied.

However, there is something more in this record. The question of whether the debtor acted properly as trustee in these transactions led to the filing of a lawsuit in the Illinois state courts long before this bankruptcy case was ever filed. That action in turn led to a stipulation under which the plaintiff and the debtor (who is an attorney) entered into an agreed order on April 11, 1975 in the Circuit Court of Cook County, Chancery Division. The agreed order was as follows:

FRANCINE KLINGMAN, Plaintiff,

v.

MELVIN E. LEVINSON, Defendant.

No. 70 CH 1039

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

AGREED JUDGMENT ORDER

This cause having come to be heard by agreement of Plaintiff, FRANCINE

KLINGMAN, ("Plaintiff") and Defendant MELVIN E. LEVINSON ("Defendant"), due notice having been given and the Court being fully advised in the premises:

THE COURT HEREBY FINDS:

1. That this Court has jurisdiction of the subject matter of this action, and had jurisdiction over the persons of the said parties hereto.

2. That Plaintiff and Defendant have stipulated that the Answer and Counterclaim heretofore filed on behalf of Defendant be withdrawn, and that each and all of the allegations of the Complaint be taken as confessed as against the Defendant.

3. That Plaintiff and Defendant have stipulated that on July 19, 1967, Plaintiff established a trust wherein Defendant was named Trustee, and pursuant thereto, delivered to Defendant as Trustee, assets having a value on such date of $37,550.

4. That Defendant, in disregard of his fiduciary duties and obligations as Trustee, has failed to retain and conserve the said trust corpus and income therefrom, but rather, in violation of and disregard of his fiduciary duties and obligations as Trustee, has, through his misappropriation and defalcation, allowed or caused the dissipation and loss of the said trust corpus and income therefrom.

5. Without limiting the generality of the foregoing, it is specifically stipulated by the parties and found by the Court:

a. That Defendant has failed to obtain, preserve and present to Plaintiff records of transactions involving the said trust corpus and income therefrom;

b. That Defendant has failed to file and present a full, accurate, and detailed accounting of all trust income, expenses and assets to Plaintiff or to the Court;

c. That Defendant has failed to deliver to Levy and Erens, as Escrowee, any property, as heretofore ordered on January 7, 1975 so to do;

d. That in or about August, 1967, Defendant expended approximately $36,000 of Trust assets to purchase a certain fractional share "Oil Payment" in and to certain oil and gas leases ... and took title thereto in Defendant's own name individually, and not in the name of the Trust, or his name as Trustee thereof;

e. That Defendant has expended the said Trust corpus and income therefrom in an improper manner and in improper investments;

6. That malice is the gist of this action, and that the Defendant has stipulated that it is his intention that the obligation to Plaintiff created by this Agreed Judgment Order not be dischargeable in any bankruptcy or similar proceeding, and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof.

7. That the parties have stipulated and agreed that Plaintiff may recover from Defendant, in addition to any other amounts due, the expenses incurred by Plaintiff in maintaining this action, specifically including attorneys' fees, through the time of satisfaction of this judgment, which sum is found to be $10,000.00.

IT IS THEREFORE ORDERED:

1. The Answer and Counterclaim heretofore filed on behalf of Defendant MELVIN E. LEVINSON is hereby withdrawn, and all the allegations of the Complaint are hereby taken as confessed as against Defendant.

2. Judgment is hereby entered in favor of Plaintiff and against Defendant in the following amount:

a. $37,550.00 plus

b. Interest thereon at the rate of 5% per annum from July 17, 1967 to the date hereof, which interest is in the total amount of $14,550.00 plus

c. $10,000.00 pursuant to Paragraph 7 of the Court's findings herein.

3. The Court finds and orders that there is no just reason for delaying enforcement of this Judgment.

ENTER:

Walter P. Dahl

Judge

Dated: April 11, 1975

The plaintiff's summary judgment motion focuses on this state court order in light of the debtor's subsequent Chapter 7 filing on April 22, 1982. In support of her summary judgment motion, the plaintiff asserts that the state court order has a binding effect on the parties to this proceeding under principles of res judicata and collateral estoppel. She contends that all disputes between the parties were resolved by that order, and no genuine issues of material fact remain. As she sees it, the parties' stipulations incorporated in the state court order set forth sufficient facts to show that the debtor's misappropriation or defalcation caused the trust assets to be dissipated. The plaintiff alleges that at a minimum, the debtor's failure to maintain records of transactions involving the trust res and income and his failure to maintain a detailed accounting of all trust income, expenses, and assets amount to defalcation under § 523(a)(4).[1]

The debtor argues that res judicata and collateral estoppel do not prevent this Court from making its own determination of the debt's dischargeability. He further claims that there is no evidence to support the facts set forth in the state court Agreed Judgment Order. Lastly, the debtor alleges that he had authority to purchase the leases, and that the purchase was properly entered into as part of a joint investment with the property placed in escrow.

## II. RES JUDICATA AND COLLATERAL ESTOPPEL

■ The Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) made it clear that res judicata[2] does not prevent a bankruptcy court from going behind a state court judgment to determine whether a debt is nondischargeable under § 17 of the prior Bankruptcy Act. Courts have universally applied *Brown*'s rationale to questions of dischargeability proceedings under § 523 of the Bankruptcy Code. *See, e.g., In re Johnson*, 691 F.2d 249 (6th Cir.1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980); *In re Goodman*, 25 B.R. 932 (Bankr.N.D.Ill.1982); *In re Spector*, 22 B.R. 226 (Bankr.N.D.N.Y.1982); *In re Dohm*, 19 B.R. 132 (Bankr.N.D.Ill.1981); *Matter of Supple*, 14 B.R. 898 (Bankr.D. Conn.1981). In *Brown*, the Court reasoned that Congress intended the bankruptcy court alone to resolve dischargeability issues, and that by limiting the application of res judicata, the bankruptcy court would be able to weigh all evidence and accurately determine whether the debtor did in fact commit deceit, fraud, or malicious conversion. 442 U.S. at 138, 99 S.Ct. at 2212. Thus, the bankruptcy court in determining the dischargeability of a debt is not bound by the legal and factual determinations made by a state court in cases in which the state court did not determine all the elements necessary to a finding of nondischargeability.

*Brown*, however, left unresolved the related issue of the applicability of collateral

---

1. The plaintiff also contends that the debtor's untimely filing of his answers to plaintiff's requests for admissions amounts to an admission of all facts stated therein, thus leaving no issues of fact before this Court. For the reasons stated herein, the Court does not have to reach this issue.

2. Res judicata is commonly referred to as claim preclusion because it precludes relitigation of all issues between the same parties after a valid, final judgment on the merits. Res judicata applies to all matters that should or could have been litigated in the same cause of action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Alexander v. Chicago Park District*, 773 F.2d 850, 853–54 (7th Cir. 1985); *Res Judicata and Collateral Estoppel in Bankruptcy Discharge Proceedings*, 37 Wash. & Lee L.Rev. 281, 281–82 (1980); Vestal, *The Constitution and Preclusion/Res Judicata*, 62 Mich. L.Rev. 33, 34 (1963).

estoppel.[3] In a footnote, the Court indicated that collateral estoppel should be applied if the state court's factual findings were based on standards identical to those used by the bankruptcy court in its dischargeability determination.

This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. [citations omitted] If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar litigation of those issues in bankruptcy court.

*Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. Most courts, especially in recent months, have followed the lead of *Brown* and applied collateral estoppel when the state law standards match those of the Bankruptcy Code. *See Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981); *Matter of Merrill,* 594 F.2d 1064, 1067 (5th Cir.1979); *Matter of Ross,* 602 F.2d 604, 607–08 (3d Cir.1979); *In re Shepherd,* 56 B.R. 218, 219 (W.D.Va.1985); *In re Bishop,* 55 B.R. 687, 688–89 (Bankr.W.D.Ky.1985); *In re Perrin,* 55 B.R. 401, 402 (Bankr.D.N.D.1985); *In re D'Annolfo,* 54 B.R. 887, 888–89 (Bankr.D.Mass.1985). *But see In re DiNoto,* 46 B.R. 489, 491 (9th Cir.BAP 1984); *In re Moultrie,* 51 B.R. 368, 373 (Bankr.W.D. Wash.1985).

The Seventh Circuit to date has not addressed the application of collateral estoppel to bankruptcy cases. However, two cases in this court have addressed the issue, *In re Wade,* 26 B.R. 477 (Bankr.N.D. Ill.1983) and *Matter of Dohm,* 19 B.R. 132 (Bankr.N.D.Ill.1981). These courts found the application of collateral estoppel discretionary, allowing the bankruptcy court to look behind the state court action but not requiring it to do so. If the plaintiff obtained judgment fairly, the defendant was afforded due process at all times, and the complaint and judgment unambiguously provide findings leading the bankruptcy court to conclude that the judgment debt is necessarily nondischargeable, the bankruptcy court may hold on the basis of state court proceedings that the debt is nondischargeable. *See also In re Goldzweig,* 54 B.R. 229, 233 (Bankr.N.D.Ill. 1985).

Assuming fairness standards to have been satisfied in the nonbankruptcy court proceedings, then application of collateral estoppel requires satisfaction of four elements: 1) the issues are the same in the dischargeability and the nonbankruptcy actions; 2) the issues were actually litigated in the nonbankruptcy action; 3) the issues were determined by a valid and final judgment of the nonbankruptcy court; and 4) the determination was essential to the final judgment. *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 137 (N.D.Ill.1982); *Matter of Life Science Church of River Park,* 34 B.R. 529, 533 (Bankr.N.D.Ind.1983). If the parties never litigated the issues in the nonbankruptcy forum, the debtor/defendant should be afforded the opportunity to litigate them in the bankruptcy court even if the creditor's complaint raised the issues. *See In re McKenna,* 4 B.R. 160 (Bankr.N.D.Ill.1980).

In the present case, the plaintiff has satisfied all four requirements and the Court therefore will apply collateral estoppel to preclude the debtor from relitigating the same issues raised in state court. First of all, the same issues arose in both the

---

3. Collateral estoppel is commonly referred to as issue preclusion because it precludes relitigation of the same issues between the same parties in different causes of action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Jones v. City of Alton, Ill.,* 757 F.2d 878, 884 (7th Cir.1985); *Res Judicata and Collateral Estoppel in Bankruptcy Proceedings,* 37 Wash. & Lee L.Rev. 281, 282 (1980). Collateral estoppel applies to relitigation of issues actually and necessarily contested in one law suit in a later law suit involving those same issues in a different legal context.

state court and bankruptcy proceedings. The state court specifically considered the issue of whether the debtor caused the loss of trust assets by fraud or defalcation while acting as a fiduciary. In paragraph 4 of its order, the state court found "[t]hat Defendant, in disregard of his fiduciary duties and obligations as Trustee, has failed to retain and conserve the said trust corpus and income therefrom, but rather, *in violation of and disregard of his fiduciary duties and obligations as Trustee, has, through his misappropriation and defalcation,* allowed or caused the dissipation and loss of the said trust corpus and income therefrom." (emphasis added) Section 523(a)(4) of the Bankruptcy Code provides for the nondischargeability of a debt for "fraud or defalcation while acting in a fiduciary capacity...." Three elements must be established for nondischargeability under § 523(a)(4): 1) an express trust existed; 2) the debt was caused by fraud or defalcation; and 3) the debtor acted as a fiduciary to plaintiff when the debt was created. *See In re Interstate Agency, Inc.,* 760 F.2d 121, 124 (6th Cir. 1985); *In re Wolfington,* 48 B.R. 920, 923 (Bankr.E.D.Pa.1985); *In re Wade,* 43 B.R. 976, 982 (Bankr.D.Colo.1984). Each of these requirements was addressed in the state court's findings. The issues in both courts were the same.

Second, the issue of fiduciary fraud or defalcation was actually litigated in the state court. The parties entered into a stipulation whereby the debtor confessed his liability for fiduciary defalcation. The debtor, as an attorney, can be charged with understanding the consequences of the stipulation. The state court made specific findings based on the stipulation. The stipulation and the findings based thereon constitute an actual litigation of the issues. The Court might well reach a contrary conclusion if the plaintiff had gained a default judgment. *See e.g., In re Goodman,* 25 B.R. 932, 939 (Bankr.N.D.Ill.1982). However, the debtor here did not submit to a default, but rather agreed to the stipulation. The debtor cannot now be heard to demand the day in court he voluntarily

waived many years ago in the state court proceeding by entering into the stipulation rather than going to trial on the merits. It was his choice. He must live with the consequences. "The fact that this judgment was the result of the parties' stipulation of settlement does not detract from its being considered a conclusive determination of the merits of that action for purposes of collateral estoppel" where the parties intended the judgment to resolve all the issues raised in that action. *Green v. Ancora-Citronelle Corp.,* 577 F.2d 1380, 1383 (9th Cir.1978). *Accord In re Austin,* 26 B.R. 751, 752 (Bankr.S.D.Fla.1982). There is no allegation that the parties did not intend the stipulation to finally determine the issues.

Third, the state court's order was a valid and final judgment. No appeal was taken from the state court's order. *See United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 138 (N.D.Ill.1982). There is no allegation that the state court was without jurisdiction or that its order is tainted by fraud or is somehow or other void.

Lastly, the issue of the debtor's fiduciary defalcation was essential to the state court's final judgment. In paragraph 4 of its order, the state court specifically found that the debt was caused by the debtor's defalcation while acting in a fiduciary capacity. Paragraph 5 of that order elaborated on those findings. The state court then entered judgment in favor of the plaintiff based strictly on the extent of the debtor's fiduciary defalcation.

### III. WAIVER OF DISCHARGEABILITY

■ In reaching the conclusion that summary judgment is appropriate here, the Court gives no weight to that portion of paragraph 6 of the state court's order that specifically stated that the parties agreed that the debt would not be discharged by the debtor in bankruptcy. The debtor has not contracted away the right to a bankruptcy discharge because he may not do so in advance of his bankruptcy case for pub-

lic policy reasons. The general rule is that all debts are dischargeable in bankruptcy unless specifically excepted by the Bankruptcy Code provisions.[4] *In re Marino,* 29 B.R. 797, 799 (D.N.D.Ind.1983). Exceptions to discharge are strictly construed to further the policy of affording the debtor a broad discharge and an effective fresh start. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Matter of Cross,* 666 F.2d 873, 880 (5th Cir. 1982); *In re Vickers,* 577 F.2d 683, 687 (10th Cir.1978); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977). Section 523 enumerates the exceptions to discharge, and does not except from discharge those debts which the debtor has agreed by contract shall not be discharged in bankruptcy.

Three conditions must be met for a waiver of discharge to be valid under the Bankruptcy Code: it must be in writing, signed by the debtor after the order for relief, and approved by the court. 11 U.S.C. § 727(a)(10). Since there is no evidence of a postpetition waiver of discharge here, the debtor has not waived his right to a discharge.[5] Waivers of dischargeability of any particular debts should be governed by the reaffirmation rules. *See* §§ 524(c) and (d). In the context of this pre-Bankruptcy Amendments and Federal Judgeship Act of 1984 version of the Bankruptcy Code governing this case, that would have required the debtor to reaffirm the state court judgment (a nonconsumer debt) before discharge. Obviously that procedure was not followed in this case. Absent a reaffirmation, the language of the Bankruptcy Code specifically provides that "[a] discharge in a case under this title ... (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, *whether or not discharge of such debt is waived.*" 11 U.S.C. § 524(a)(1) (emphasis added). *Cf. Union Carbide Corp. v. Newboles,* 686 F.2d 593 (7th Cir.1982). Therefore the debtor's prepetition waiver of the discharge of the debt owed to this creditor is of no legal effect.

## IV. CONCLUSION

This Court finds that the debtor is barred by the principle of collateral estoppel from relitigating the issue of whether his debt is nondischargeable based on fiduciary fraud or defalcation. Consequently, the plaintiff's motion for summary judgment is granted because there are no genuine issues of material fact. *See* Fed.R.Civ.P. 56(c); Bankruptcy Rule 7056. The plaintiff's claim against the debtor for $37,550 is nondischargeable under § 523(a)(4). The plaintiff is entitled to interest on that amount from the date the debtor filed his bankruptcy petition[6] and may recover attorneys' fees awarded in paragraph 7 of the state court's order.[7]

---

**4.** Occasionally *federal* law other than Title 11 of the United States Code provides that a specific kind of debt is not dischargeable in bankruptcy. *See, e.g.,* 42 U.S.C. § 292f(g) (certain federally guaranteed health education loans); *see also Dept. of Health and Human Services v. Johnson,* 45 B.R. 885 (N.D.Ill.1985); *In re Hampton,* 47 B.R. 47 (Bankr.N.D.Ill.1985). State statutory law could not limit the availability of a bankruptcy discharge. U.S. Const. art. VI; *cf. In re Howell,* 51 B.R. 1015, 1016 (M.D.N.C.1985). Similarly, a state court judgment cannot limit the availability of a bankruptcy discharge.

**5.** Indeed, the record in this case reveals that this debtor was granted a discharge on December 5, 1985. The only question before the Court in this proceeding is whether that discharge will apply to the debt owed to this plaintiff.

**6.** *See Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907, 11 L.Ed.2d 772 (1964); *Oxford Investment Co.,* 246 F.Supp. 651, 652–53 (S.D. Cal.1965).

**7.** In general, attorneys' fees awarded by a state court based on state statutory or contractual grounds are nondischargeable where the bankruptcy court finds that the underlying debt is itself nondischargeable. *Cf. In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985); *See In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985); *In re Foster,* 38 B.R. 639, 641–42 (Bankr.M.D.Tenn.1984); *Matter of Loken,* 32 B.R. 205, 209 (Bankr.W.D. Wis.1983). Illinois courts may grant attorneys' fees to a prevailing party under Ill.Ann.Stat. ch. 110, § 5–108 (Smith-Hurd 1985). The state court here awarded attorneys' fees to the plaintiff as a consequence of the debtor's fiduciary defalcation. The debtor did not challenge the

state court's authority to grant fees. Indeed, he agreed by stipulation that the plaintiff could recover them. This Court has found that the underlying debt of $37,550 is nondischargeable. Likewise, the attorneys' fees awarded by the state court based on that underlying debt are nondischargeable. Those attorneys' fees are part of the state court judgment. In essence, the state court held that the attorneys' fees were part of the damages which this plaintiff suffered as a result of the debtor's fraud or defalcation while acting as a fiduciary. Just as the debtor is collaterally estopped from relitigating the dischargeability of the main debt, he is also collaterally estopped from relitigating the question of whether attorneys' fees are to be included in the amounts which are nondischargeable. A sharp contrast must be drawn between the prepetition state court attorneys' fees which the plaintiff seeks to have determined to be nondischargeable in this proceeding and the postpetition attorneys' fees incurred by the plaintiff in litigating this dischargeability complaint in this Court. The overwhelming weight of authority is that the latter type of attorneys' fees are dischargeable because the Bankruptcy Code does not provide for the awarding of attorneys' fees for creditors who prevail in a dischargeability complaint. *See e.g., In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985); *In re Chick,* 53 B.R. 697, 704 (Bankr.D.Or.1985); *Dougherty v. Brackett,* 51 B.R. 987, 989 (Bankr.D.Colo.1985); *Matter of Benedict,* 15 B.R. 675, 678–79 (Bankr.W.D.Mo. 1981). *Contrast* 11 U.S.C. § 523(d). However, that question is not now before the Court.